UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CORT BUSINESS SERVICES CORPORATION,               )<br>                                                                   )<br>                          Plaintiff,              )<br>       vs.                                                   )<br>                                                                   )<br>ELEVEN23 MARKETING, LLC, *et al.*,   )<br>                                                                   )<br>                          Defendants.          )<br>                                                                   ) | Case No.: 2:15-cv-02454-GMN-PAL<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss, (ECF No. 33),[1] filed by Defendants Eleven23 Marketing, LLC ("Eleven23") and Armen Gharabegian ("Gharabegian") (collectively "Defendants"). Plaintiff CORT Business Services Corporation ("CORT") filed a Response, (ECF No. 36), and Defendants filed a Reply, (ECF No. 38). For the reasons discussed below, the Court **GRANTS** Defendants' Motions to Dismiss.[2]

I. <u>BACKGROUND</u>

This case arises out of Defendants' alleged breach of a Master Supply Agreement ("MSA") with CORT. Gharabegian owns and operates Eleven23 and Lounge22, LLC ("Lounge 22"), both furniture design and manufacturing companies. (Compl. ¶ 5, ECF No. 1). Gharabegian resides in Los Angeles County, California, and Eleven23 has its principle place of

---

[1] Defendants' Motion exceeds the District of Nevada's Local Rules' page limits. *See* L.R. 7-3(b). Defendants have neither sought nor obtained prior authorization from the Court to exceed such limits. The Court cautions Defendants to abide by the Local Rules. In the future, the Court will not consider any brief that exceeds the page limit without prior authorization.

[2] Also pending before the Court is Defendants' Motion to Strike, (ECF No. 42), certain exhibits attached to a declaration in support of CORT's opposition to Defendants' Motion to Dismiss. Defendants argue that the exhibits improperly present evidence outside of the pleading. (Mot. to Strike 2:12–19). Because the exhibits do not enter into the instant analysis, the Court DENIES Defendants' Motion to Strike as moot.

business in Los Angeles County, California. (*Id.* ¶¶ 2, 5). CORT asserts that it is a Delaware corporation in the business of furniture and accessory rentals, a large part of which is in the trade show and events industry in Las Vegas, Nevada. (*Id.* ¶¶ 1, 11).

In September 2009, Lounge22 filed for Chapter 11 bankruptcy. (*See* Ex. A to Mot. to Dismiss ("MTD") at 12, ECF No. 33-1). Following this bankruptcy, CORT and Gharabegian, on behalf of Lounge22, entered into an Asset Purchase Agreement ("APA") under which CORT would purchase certain products and furnishings from Lounge22. (*Id.*). The APA contained a choice of law clause which stated the APA would be governed by laws of California. (*Id.* at 39). Shortly thereafter, Gharabegian created Eleven23 as Lounge22's successor entity. (Compl. ¶ 24)

In August 2010, CORT and Eleven23 entered into the MSA, under which Eleven23 would design and manufacture furniture for CORT, and CORT would license the Lounge22 trademark. (*See* Ex. 1 to Compl. ("MSA"), ECF No. 1-1). The MSA contains a forum selection clause, requiring the MSA to be governed by laws of Nevada and adjudicated by a state or federal court located in Nevada. (*Id.* § 25). CORT alleges that pursuant to the MSA, it placed "several purchase orders in October 2014 for thousands of pieces in the Naples furniture collection." (Compl. ¶ 59). CORT alleges that it received the furniture late, "did not receive all of the ordered pieces," and the pieces it did receive "were defective because the quality of the vinyl was of a much lower standard than the parties had agreed upon." (*Id.* ¶¶ 65–67). In particular, "[t]he quality was so poor that the fabric would not withstand multiple rentals by CORT's customers, i.e., could not fulfill their intended purpose." (*Id.* ¶ 67).

After discussions failed to resolve this and other disagreements related to the MSA, both parties initiated separate lawsuits. First, Eleven23 and Gharabegian filed an action in Los Angeles County Superior Court, asserting breach of the MSA as well as trademark infringement claims for CORT's use of the Lounge22 trademark. *See* Compl., *Eleven23 Mktg.,*

*LLC v. CORT Bus. Servs. Corp.*, No. 2:16-cv-01308 (D. Nev. Jan. 8, 2016). That case was removed to the Central District of California. (*Id.*). Shortly thereafter, CORT filed the instant case in this Court asserting various claims under the MSA. (*See* Compl.). In the instant Motion, Defendants seek to dismiss CORT's Complaint for failure to state a claim, or in the alternative, to transfer the case to the Central District of California. (*See* MTD, ECF No. 33). After the Motion was fully briefed, the Central District of California transferred the first case to this district to be consolidated with this case. *See* Order, *Eleven23 Mktg., LLC v. CORT Bus. Servs. Corp.*, No. 2:16-cv-01308 (D. Nev. June 10, 2016).

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added). In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III. DISCUSSION

CORT's Complaint asserts the following claims: (1) alter ego/piercing the corporate veil; (2) specific enforcement of the MSA; (3) breach of the MSA; and (4) breach of warranty. (Compl. ¶¶ 92–128). In the instant Motion, Defendants seek to dismiss CORT's Complaint for failure to state a claim, or in the alternative, to transfer the case to the Central District of California. (*See* MTD, ECF No. 33). The Court considers these arguments in turn.

### A. Motion to Dismiss

#### 1. *Alter Ego*

To state a claim for alter ego liability, a plaintiff must allege that: (1) the corporation is influenced and governed by the person asserted to be its alter ego; (2) there is such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the fiction of separate entity would sanction fraud or promote injustice. *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496 (Nev. 1998). "It is not necessary that the plaintiff prove actual fraud. It is enough if the recognition of the two entities as separate would result in an injustice." *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886 (Nev. 1987). "In determining whether a unity of interest exists between the individual and the corporation, courts have looked to factors like co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities." *Id.* at 887.

CORT alleges that "Gharabegian, the CEO of the corporate Defendants, uses Eleven23, Lounge 22, and Ethos as mere shells or conduits for his business affairs." (Compl. ¶ 94). Further, CORT alleges that "Gharabegian co-mingles the corporate Defendants' operations, including offices, employees, funds, and other company assets." (*Id.* ¶ 95). On this point, CORT asserts that "Gharabegian communicated with CORT about the [MSA] under the corporate names of Eleven23, Lounge 22, and Ethos; employees from all three entities work

with CORT under the [MSA]; and CORT has issued purchase orders to and paid all three entities." (*Id.* ¶ 96). As a result of these activities, CORT contends that a unity of interest exists between Defendants such that "[t]reating Defendants as separate entities . . . would bring about an inequitable result and promote injustice." (*Id.* ¶¶ 96–97).

Taking these allegations as true, the Court finds that CORT has plausibly alleged an alter ego relationship between Gharabegian, Eleven23, and Lounge 22. The Court therefore DENIES Defendants' Motion with regard to this claim.

### 2. *Specific Performance*

Specific performance is a form of contractual remedy and not an independent cause of action. *Blanford v. SunTrust Mortg., Inc.*, No. 2:12-cv-852-JCM-RJJ, 2012 WL 4613023, at *3 (D. Nev. Oct. 1, 2012); *see Carcione v. Clark*, 618 P.2d 346, 348 (Nev. 1990). For an award of specific performance, a plaintiff must establish breach of contract by the defendant. *Blanford*, 2012 WL 4613023, at *3. "Under the 12(b)(6) standard, a request for a specific remedy is not sufficient to state a claim upon which relief can be granted." *Silver State Broad., LLC v. Beasley FM Acquisition Corp.*, No. 2:11-cv-01789-MMD, 2012 WL 3996369, at *2 (D. Nev. Sept. 11, 2012). The Court therefore DISMISSES CORT's claim for specific performance, but notes that specific performance may still be available to CORT as a remedy.

### 3. *Breach of Contract*

CORT's third cause of action alleges breach of the MSA. (Compl. ¶¶ 108–19). To state a claim for breach of contract in Nevada, the plaintiff must allege: (1) the existence of a valid agreement between the plaintiff and the defendant; (2) a breach by the defendant; and (3) damages as a result of the breach. *Calloway v. City of Reno*, 993 P.2d 1259 (Nev. 2000).

CORT alleges that the parties entered into a valid agreement, the MSA, on August 9, 2010, which automatically renewed on August 9, 2015. (Compl. ¶¶ 110–12). Moreover, CORT alleges that "Defendants breached the MSA when it failed to repair all of the defective

[furniture]." (*Id.* ¶ 115).  Taking these allegations as true and in a light most favorable to CORT, the Court finds that CORT sufficiently alleges a breach of contract claim. While the parties argue over issues related to the automatic renewal provision and excused performance due to material breach, these issues are not amenable to resolution at the motion to dismiss stage. (*See* MTD 19:14–26:8).  Accordingly, the Court DENIES Defendants' Motion to Dismiss as to this claim.

### 4. *Breach of Warranty*

To successfully bring a breach of warranty claim, "a plaintiff must prove that a warranty existed, the defendant breached the warranty, and the defendant's breach was the proximate cause of the loss sustained." *Nev. Contract Servs., Inc. v. Squirrel Cos., Inc.*, 68 P.3d 896, 899 (Nev. 2003); *see also* NRS § 104.2313.  "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." NRS § 104.2313(1)(b).[3]

CORT alleges that "Defendants warranted [in § 15 of the MSA] that products would be free from defects," specifically defects "in both the materials and the workmanship." (Compl. ¶ 124); (*see also* MSA § 15(a)).  Further, CORT alleges that "[t]he parties explicitly discussed and CORT approved a specific grade of vinyl," but the furniture "was not manufactured to the agreed-upon specifications." (*Id.* ¶¶ 121, 127).  Finally, CORT alleges that it has "suffered and continues to suffer damages" as a result of this alleged breach. (*Id.* ¶ 128).  These allegations sufficiently allege a breach of the warranty outlined in § 15(a) of the MSA. *See McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1177 (9th Cir. 1997) ("[A] defect in labor,

---

[3] The Complaint does not clarify whether CORT alleges breach of express or implied warranties.  The MSA disclaims all express and implied warranties, save that the furniture: (1) "shall be free from any defects in materials or workmanship"; (2) "will be of merchantable quality"; and (3) will be conveyed with good title. (MSA § 15(a)–(e)).  To the extent CORT alleges breach of warranty outside of these three express warranties, such claims are foreclosed by the disclaimer. *See Sierra Creek Ranch, Inc. v. J. I. Case*, 634 P.2d 458, 460 (Nev. 1981) ("[A] disclaimer written conspicuously, in capital letters, [is] sufficient to preclude the existence of any implied or express oral warranties.").

material, or manufacture is a defect or flaw in the *quality* of the labor, material, or manufacture of the product."). Accordingly, the Court DENIES Defendants' Motion to dismiss CORT's breach of warranty claim.

**B.    Venue**

Defendants seek, in the alternative to dismissal, transfer of this case to the Central District of California based on improper venue pursuant to 28 U.S.C. §§ 1406(a) or 1404(a), despite the MSA's forum selection clause favoring Nevada. Venue is proper "so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 578 (2013). If a court finds that venue meets the requirements of § 1391(b), the court must then determine the effect of the forum selection clause under § 1404(a). *See, e.g.*, *id.* at 579 ("Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a).").

Section 1391(b) provides that "[a] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Defendants participated in meetings in Las Vegas to discuss product designs and purchase orders and delivered furniture ordered under the MSA to Las Vegas. (*See, e.g.*, Ross Decl. ¶ 12–13, 22, ECF No. 36-5). The District of Nevada is thus a proper venue under § 1391(b) as a substantial part of the events giving rise to CORT's claims occurred in Las Vegas. Accordingly, § 1404(a) is the proper mechanism for evaluating the MSA's forum-selection clause.

Section 1404 allows for transfer to another federal district when the convenience of parties and witnesses or the interests of justice are served. *See* 28 U.S.C. § 1404. It "requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 134 S. Ct. at 579 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

33 (1988)).  Forum selection clauses in contracts are "presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)).  A forum selection clause is unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen*, 407 U.S. at 15.

Defendants do not argue that the language of the forum selection clause in the MSA is ambiguous or the result of fraud or undue influence.  Instead, Defendants assert that the APA "is the seminal agreement that controls the relationship of the parties," and the forum selection clause contained in the APA favoring the Central District of California requires transfer to that district. (MTD 32:17–34:1).  The Central District of California, however, has already rejected this argument in the member case now consolidated with this case.  There, the court found that Defendants failed to explain how the APA controls the relationship of the parties with respect to the MSA, explaining:

> [T]he facts point to these two transactions as being separate and distinct from one another.  The APA relates to the purchase of assets from Lounge22, which had declared bankruptcy, while the MSA relates to an agreement for Eleven23 to design and produce furniture for CORT.  The only connection between these two agreements is that both companies are owned by Gharabegian, both companies were in same business of producing furniture, and both companies sent furniture to CORT.  The MSA was not a successor contract to the APA, but an entirely different agreement.  While the end result of the agreements may have been the same—CORT obtaining furniture—the two agreements arose from different circumstances and cannot be considered one transaction.

Order, *Eleven23 Mktg., LLC v. CORT Bus. Servs. Corp.*, No. 2:16-cv-01308 (D. Nev. June 10, 2016).  Because the Court agrees that the MSA governs the parties' relationship in this

instance, the Court applies the forum selection clause therein favoring this district. The Court therefore DENIES Defendants' request to transfer this action to the Central District of California.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 33), is **GRANTED in part** and **DENIED in part**. CORT's claim for specific performance is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike, (ECF No. 42), is **DENIED as moot**.

**DATED** this __22__ day of February, 2017.

_____
Gloria M. Navarro, ~~Chief~~ Judge
United States District Judge